IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TARJILYN JAMES                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 1:16-CV-38-SA-DAS

CLC OF PASCAGOULA, LLC
d/b/a PLAZA COMMUNITY LIVING CENTER                                DEFENDANT

MEMORANDUM OPINION

Tarjilyn James filed her case in this Court in March of 2016, and followed up with an

Amended Complaint [29] on September 13, 2016. In her Amended Complaint, James alleges that

her former employer, Plaza Community Living Center, fired her because she is black and in

retaliation for her reports of illegal activities of other employees. James seeks relief under Title VII

of the Civil Rights Act and under Mississippi's public policy exception to the employment-at-will

doctrine established in *McArn v. Allied Bruce-Terminix*, 626 So. 2d 603 (Miss. 1993). In addition,

the Plaintiff asserts several state law claims for gross negligence, negligent and intentional infliction

of emotional distress, outrage, and negligent supervision and retention.

Now before the Court is Plaza's Motion for Summary Judgment [34] on all of the Plaintiff's

claims. The Plaintiff filed a Response [37], and the Defendant filed a Reply [38, 40] making this

issue ripe for review.

*Factual and Procedural Background*

The following facts are taken largely from the Plaintiff's version of events. Factual

controversies are resolved in favor of the Plaintiff when both parties submitted evidence of

contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Plaintiff James, a Licensed Practical Nurse, began working for Defendant Plaza, a nursing

home, on a part-time basis in November of 2010. Plaintiff James is an African American female.

About a year later, the Plaintiff took a full time position as Plaza's Medical Records Nurse. By all accounts, the Plaintiff maintained a clean disciplinary record.

In July of 2015, the Plaintiff complained to Plaza administrators that Kelly Adamson, the Assistant Director of Nursing[1] and a white female, had backdated certain medical records and forged a doctor's signature. Nursing Home Administrator Chrisotfides investigated the Plaintiff's allegation against Adamson and determined it to be unfounded.[2] Adamson was not disciplined. According to the Plaintiff, her relationship with Adamson deteriorated significantly after this report.

In September of 2015, the Plaintiff observed Rachel Gibson, a white female and also an LPN, working out of uniform, handing out medication, and verbally abusing a resident. Gibson was not under the Plaintiff's direct supervision and it is disputed whether the Plaintiff had any supervisory authority over Gibson although, clearly, the Plaintiff was under a duty to report policy violations and criminal acts generally. The Plaintiff reported Gibson's actions to the administrative office and Adamson was informed. Later that day, Gibson confronted the Plaintiff about her report and thereafter, the Plaintiff attempted to gather witness statements from other employees that observed Gibson's behavior and started to "write up" or file a disciplinary report against Gibson. Soon thereafter, Adamson intervened and instructed the Plaintiff to stop her investigation into Gibson. Adamson informed the Plaintiff that she did not have the authority to write Gibson up. The Plaintiff disagreed, and continued to gather statements and complete the disciplinary forms.

Administrator Christofides was not available that day so Adamson contacted regional director James Williams. Per Williams' instructions, the Plaintiff was sent home for the day and ultimately suspended from work for one week.

---

[1] Although the chain of command at Plaza is disputed in this case, for informational purposes only, the general administrative personnel hierarchy at Plaza is as follows: Regional Director – Williams (off site) > Nursing Home Administrator - Christofides > Director of Nursing - Gregg > Assistant Director of Nursing - Adamson > Nurses (including Medical Records Nurse). The Plaintiff contends that she reported directly to Christofides until she alleges the chain of command was changed in September of 2015.

[2] According to Christofides, the doctor later confirmed that it was his signature on the document, although there is some testimony in the record that the doctor was not at the facility on the day the documents were signed.

On September 30, 2015, Christofides returned to work and the Plaintiff's suspension was over. Christofides and Director of Nursing Gregg issued a final written warning to the Plaintiff, which she signed. The final written warning stated that the Plaintiff was suspended for failing to follow the chain of command and for conducting her own investigation. The final written warning also informed the Plaintiff that she was not to conduct disciplinary investigations. The Plaintiff commented in writing on the final warning that she did not agree with the suspension, that at the time of the incident she as a department head, had the authority to write up other employees, that she did follow the chain of command because she reported directly to Christofides, and that the chain of command was changed and that she was not informed of the new chain of command. Around this same time, the administration did give an organizational chart to the Plaintiff outlining the chain of command at Plaza. The Plaintiff contends that this was a new document that changed the chain of command. Gibson was not written up or disciplined relative to the Plaintiff's allegations against her.

After returning to work post-suspension, the Plaintiff believed that her already strained relationship with Adamson worsened and that Adamson was now making overt attempts to have her terminated. The Plaintiff suspected that Adamson even offered her job to another employee, Melissa Hampton, a white female.

On October 13, 2015, the Plaintiff filed a three-page grievance form with Christofides. The Plaintiff's grievance details her concerns related to Adamson's retaliatory desire to have her terminated. The grievance form also contains information about an incident where another employee, Melissa Hampton, was allegedly talking loudly, cussing, and making threatening remarks about Director Gregg.

According to Hampton, the Plaintiff came to her and asked her to write a statement about her interactions with Adamson. The Plaintiff believed that a statement from Hampton would help to

substantiate her own concerns about Adamson. Hampton refused to provide the Plaintiff with a statement. According to Hampton, the Plaintiff was angry about her refusal to provide a statement, and in retaliation included information about the alleged threats in her grievance to Christofides.

The Plaintiff was suspended, and then terminated that same day. The disciplinary form initiating the Plaintiff's suspension states: "suspended for conducting own investigation, and not following chain of command." The Plaintiff denies conducting an investigation and contends that she was filing a grievance to protect herself from retaliation and unfair treatment from Adamson.

After her termination, the Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission and received a Right-to-Sue letter. The Plaintiff then filed this suit, and in her Amended Complaint asserts a federal claim for racial discrimination in her employment under Title VII of the Civil Rights Act. The Plaintiff alleges that white employees, specifically Adamson, Gibson, and Hampton, received more favorable treatment because they are white. In addition, the Plaintiff asserts state law claims for gross negligence, negligent and intentional infliction of emotional distress, outrage, and negligent supervision and retention. Finally, the Plaintiff asserts a *McArn* claim for wrongful termination in violation of public policy. The Plaintiff alleges that she was fired in retaliation for reporting the illegal activities of Adamson and Gibson. Defendant Plaza now requests summary judgment in its favor on all of the Plaintiff's claims.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

The record in this case contains many conflicting facts and alternate versions of the events relevant to the Plaintiff's claims. Because of these factual conflicts, this case is not well-suited for summary judgment adjudication.

Specifically with respect to the Plaintiff's *McArn* claim, the Plaintiff alleges that the Defendant fired her in retaliation for reporting two separate illegal acts. First, the Plaintiff reported that Assistant Director of Nursing Adamson forged a doctor's signature and backdated medical records. Second, the Plaintiff reported that Nurse Gibson was abusive to a resident.

In *McArn v. Allied Bruce–Terminix Co., Inc.*, the Mississippi Supreme Court adopted a limited public-policy exception to the employment at will doctrine. *McArn,* 626 So. 2d at 606.

> We are of the opinion that there should be in at least two
> circumstances, a narrow public policy exception to the employment at
> will doctrine and this should be so whether there is a written contract
> or not: [. . .] (2) an employee who is discharged for reporting illegal
> acts of his employer to the employer or anyone else is not barred by
> the employment at will doctrine from bringing action in tort for

5

damages against his employer. To this limited extent this Court declares these public policy exceptions to the age old common law rule of employment at will.

*Id.* at 607; *Swindol v. Aurora Flight Sci. Corp.*, 194 So. 3d 847, 851 (Miss. 2016).

Contrary to the Defendant's assertion, "[a]pplicability of the exception does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004); *Howell v. Operations Mgmt. Intern., Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001); *Paracelsus Health Care Corp. v. Willard,* 754 So. 2d 437, 443 (Miss. 1999) (abrogated on other grounds).

In addition, the *McArn* exception contains an inherent causation component. *See Crawford v. Bannum Place of Tupelo*, 556 F. App'x 279, 285 (5th Cir. 2014) (noting the requirement for "a causal nexus 'between the reporting of the alleged misconduct and the decision process resulting in the discharge.'") (quoting *Dismuke v. City of Indianola*, 32 F. App'x. 126 (5th Cir. 2002) (per curiam); *Hust v. Forrest Gen. Hosp.,* 762 So. 2d 298, 301–302 (Miss. 2000)).

Notably, the Defendant does not dispute that either of the Plaintiff's allegations could result in the imposition of criminal penalties, nor does the Defendant offer any argument relative to the Plaintiff's report against Adamson. Instead, the Defendant argues that it did not fire the Plaintiff for making these reports, but instead fired the Plaintiff for conducting investigations on her own and for not following the chain of command. This is a causation argument and a fact-intensive distinction that requires weighing the credibility of witness testimony and evidence. In short, there are genuine disputes of material facts as to the causal connection between the Plaintiff's reports and her termination that preclude a summary judgment determination on this issue.

As to the Plaintiff's Title VII claim for racial discrimination, the Defendant concedes, for summary judgment purposes, that the Plaintiff has established a *prima facie* case of race

discrimination as required under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The Defendant met their burden of production by advancing a legitimate non-discriminatory reason for the Plaintiff's termination, specifically that she was terminated for conducting her own investigations and for failing to follow the chain of command. *See Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (stating that the burden on the employer "is one of production, not persuasion; it can involve no credibility assessment.") (internal quotations omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

Because a *prima facie* case was established, and a legitimate non-discriminatory reason was advanced, the burden shifts back to the Plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Because the facts and issues relative to pretext are the same as, or at least intricately intertwined with, the facts relevant to the Plaintiff's *McArn* claim, the Court finds that genuine issues of material fact preclude a summary judgment determination on the Plaintiff's Title VII claim as well. In reviewing a motion for summary judgment as to pretext, the Court, viewing the evidence "as a whole and in the light most favorable to [the Plaintiff]" "must determine whether a rational jury *could*—not probably would—conclude that the employer's proffered non-discriminatory hiring rationale is pretextual." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 323–24 (5th Cir. 2015). The Court finds that the Plaintiff in this case has made such a showing. The Court also notes, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary

judgment if it believes that 'the better course would be to proceed to a full trial.'" *Houston v. Mississippi Dep't of Human Servs.*, 131 F. Supp. 3d 598, 605 (S.D. Miss. 2015) (quoting *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The Court finds that in this case the most prudent course is to proceed to a full trial.

Finally, the Court finds that the parties' arguments relative to the Plaintiff's state law claims for gross negligence, negligent and intentional infliction of emotional distress, outrage, and negligent supervision and retention were not fully briefed at this summary judgment stage. The Court orders the parties to submit trial briefs fully explaining their legal arguments as to these claims along with their proposed pre-trial order at the designated time.

For all of the reasons explained above the Defendant's Motion for Summary Judgment [34] is DENIED.

SO ORDERED, this 30th day of August, 2017.

  /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE